UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KEVIN MUNRO, et al.,<br><br>            Plaintiffs,<br><br>     v.<br><br>KING BROADCASTING COMPANY,<br><br>            Defendant. | CASE NO. C13-1308JLR<br><br>ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS |

Before the court is Defendant King Broadcasting Company's ("King") Motion for Judgment on the Pleadings in this class action lawsuit brought under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. (Mot. (Dkt. # 13).) King asks the court to dismiss this case in its entirety, claiming that Plaintiffs' Complaint requests relief that is unavailable under the TCPA. (Mot.) The motion is overly aggressive, not well grounded in law, and DENIED. In addition, the court rules on two pending discovery motions and awards limited sanctions.

ORDER- 1

## I. BACKGROUND

This is a case about unwanted text messages. Several years ago, Plaintiff Kevin Munro signed up to receive daily text messages about the weather from local news station "King 5." (Compl. (Dkt. # 1-1) ¶ 3.2.) Each morning, King 5 would send Mr. Munro a text message providing the weather report for the upcoming day. (*Id.*) After receiving these text messages every morning for about a month, Mr. Munro decided he no longer wanted to receive them and attempted to opt out. (*Id.*) Each message included instructions to "Reply STOP to opt out." (*Id.* ¶ 3.3.) Mr. Munro replied "STOP" to one of the text messages, but the messages kept coming. (*Id.*) Mr. Munro attempted this same action approximately ten times over the course of the next few months, but the text messages still kept coming. (*Id.*) Mr. Munro called King 5 in a further attempt to opt out. (*Id.* ¶¶ 3.3-3.4.) He was transferred to voicemail, so he left a message describing the problem and asking that the texts stop. (*Id.*) The text messages did not stop, so Mr. Munro continued to reply "STOP" to the text messages, repeating his reply of "STOP" between 30 and 50 times over the course of several months. (*Id.* ¶ 3.4.) The text messages still did not stop, and Mr. Munro alleges that they continue to this day. (*Id.*)

Mr. Munro eventually filed this lawsuit in King County Superior Court, claiming that King's actions violated the TCPA. (*See generally* Compl.) Defendant removed the case to federal court and answered the Complaint. (Not. of Removal (Dkt. # 1); Ans. (Dkt. # 6).) On October 17, 2013, King's counsel withdrew and its present counsel appeared, immediately filing this motion for judgment on the pleadings. (*See* 10/17/13 Order (Dkt. # 12); Mot.)

## II. ANALYSIS

**A. Legal Standard on a Motion for Judgment on the Pleadings**

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings after the pleadings are closed. A court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009) (citation omitted); *see Yakima Valley Mem'l Hosp. v. Wash. State Dept. of Health*, 654 F.3d 919, 925 (9th Cir. 2011) (court "assume[s] the facts alleged in the complaint are true"). "Judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Id.*; *see Lyon v. Chase Bank USA, N.A.*, 656 F.3d 877, 883 (9th Cir. 2011).

When a Rule 12(c) motion is used as a vehicle for a Rule 12(b)(6) motion after an answer has been filed, or when it is functionally equivalent to a motion to dismiss for failure to state a claim, the same standard applies to both. *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989); *see Seabright Ins. Co. v. Matson Terminals, Inc.*, 828 F. Supp. 2d 1177 (D. Haw. 2011) (motions differ in time of filing but are otherwise functionally identical and require same standard of review). Dismissal for failure to state a claim "is proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

B.  Discussion

King's motion for judgment on the pleadings argues that Mr. Munro is not allowed to sue under the TCPA. (Mot. at 3-4.) King argues that, because Mr. Munro gave his consent to receive the text messages, he has forever waived his right to recover damages under the TCPA. (*Id.*) King argues that the TCPA does not provide a remedy for telephone users who provide express consent to receive messages but later revoke that consent, even if the messages continue after consent is revoked. (*Id.*) King insists that for the court to take any contrary position would be a "re-writing of the statute" that is "exclusively Congress's province." (*Id.* at 4.) For the reasons described below, the court disagrees.

Under the TCPA, it is unlawful to send unsolicited text messages to a person's cellular telephone. *See* 47 U.S.C. § 227. The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls. *Mims v. Arrow Fin. Servs., LLC*, --- U.S. ----, 132 S. Ct. 740, 745 (2012). The TCPA makes it "unlawful for any person within the United States . . . to make a call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic dialing system . . . to any telephone number assigned to a . . . cellular telephone service . . . for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A). The Federal Communications Commission ("FCC"), the agency charged with implementing the TCPA, has ruled that the TCPA applies not only to voice calls but also to text messages, including those sent using short message service (SMS). *See Rules and Regulations Implementing Telephone Consumer Protection Act of 1991*, CG Dkt. No. 02-

278, Report and Order, 18 FCC Rcd. 14014, 14115, ¶ 165 (2003). The TCPA creates a private right of action for persons affected by violations of its provisions and authorizes an award of $500.00 in statutory damages for each violation and the possibility of treble damages. 47 U.S.C. § 227(b)(3).

As King points out, the TCPA is silent on whether a consumer may revoke previously-granted consent to receive text messages. (Mot. at 4.) It is clear under the statute that damages cannot be awarded if the caller has the "prior express consent of the called party." *See* 47 U.S.C. § 227(b)(1)(A). But the TCPA says nothing about whether, if the called party revokes consent, it is lawful for the caller to ignore that revocation and continue to call as if the consent never even occurred. *See* 47 U.S.C. § 227(b).

Nevertheless, the weight of authority suggests that consent may be revoked under the TCPA and that if messages continue after consent is revoked, those messages violate the TCPA. *See, e.g.*, *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 268-272 (3d Cir. 2013); *Beal v. Wyndham Vacation Resorts, Inc.*, --- F. Supp. ----, 2013 WL 3870282, at *16 (W.D. Wis. June 20, 2013); *Adamcik v. Credit Control Servs., Inc.*, 832 F. Supp. 2d 744, 749 (W.D. Tex. 2011); *Moore v. Firstsource Advantage, LLC*, No. 07-CV-770, 2011 WL 4345703, at *11-12 (W.D.N.Y. Sept. 15, 2011); *Brook v. Suncoast Schs., FCU*, No. 8:12-cv-01428-T-33MAP, 2012 WL 6059199, at *4 (M.D. Fla. Dec. 6, 2012); *Sengenberger v. Credit Control Servs., Inc.*, No. 09 C 2796, 2010 WL 1791270, at *4 (N.D. Ill. May 5, 2010). Although the Ninth Circuit has not addressed this question, at

least one district court in the Ninth Circuit has.  *Gutierrez v. Barclays Grp.*, No. 10cv1012 (BGS), 2011 WL 579238, at *4 (S.D. Cal. Feb 9, 2011)

The courts that have reached this conclusion have done so for several key reasons.  First, the term "consent" must be read to incorporate its common law meaning absent Congressional indication to the contrary, and at common law consent may be revoked.  *See, e.g.*, *Gager*, 727 F.3d at 270-71 (citing *Neder v. United States*, 527 U.S. 1, 21 (1999) ("[W]here Congress uses terms that have accumulated settled meaning under . . . the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms.")); *see id.* at 271 (citing RESTATEMENT (SECOND) OF TORTS § 892A, cmt. I (1979)).  Second, allowing consumers to revoke consent is "in line with the purpose of the TCPA"; the TCPA is a remedial statute passed to protect consumers from unwanted automated telephone calls and messages and should be construed in accordance with that purpose.  *Id.* at 271 (citing *Lesher v. Law Offices of Mitchell N. Kay, PC*, 650 F.3d 993, 997 (3d Cir. 2011)).  Finally, this interpretation hews carefully to the FCC's decision on this issue in *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Soundbite Commc'n, Inc.*, 27 FCC Rcd. 15391 (Nov. 26, 2012).  In that ruling, the FCC stated that "consumer consent to receive . . . messages is not unlimited," and that a consumer may "fully revoke" prior consent by transmitting an opt-out request to the sending party.  *Id.* at 15397 ¶¶ 8, 11.  In *Gager*, the court held that the *Soundbite* decision served as additional authority supporting its conclusion that consent can be revoked under

the TCPA.[1]  *Gager*, 727 F.3d at 271-72.  All of these reasons are persuasive, and the court incorporates the analysis in *Gager* and the cases that follow it herein.

King asserts that there is a "split of decisions" on whether consent may be revoked.  This is an overstatement.  King cites only three cases to support its position, and all of them are suspect.  First and foremost, King cites dicta in *Saunders v. NCO Fin. Sys., Inc.*, 910 F. Supp. 2d 464, 468-69 (E.D.N.Y. 2012).  The *Saunders* decision provides only cursory analysis on this question and, notably, relies heavily on the district court decision in *Gager* that was later reversed by the Third Circuit.  *See id.* at 468-69; *Gager*, 727 F.3d at 274 (reversing district court).  The *Saunders* decision also preceded the FCC's ruling in *Soundbite*, so the court did not have the benefit of the FCC's guidance on this topic.  *See Saunders*, 910 F. Supp. at 468-69.  King's citation to *Chavez v. Advantage Grp.*, --- F. Supp. 2d ----, 2013 WL 4011006, at *3-4 (D. Colo. Aug. 5, 2013) suffers from the same problems.  The analysis is cursory, does not discuss *Soundbite*, and relies only on *Saunders* and the district court decision in *Gager*, which was reversed two weeks later.  *See Chavez*, 2013 WL 4011006, at *3-4.  Similarly, King's citation to *Kenny v. Mercantile Adjustment Bureau, LLC*, No. 10-CV-1010, 2013 WL 1855782, at *6-7 (W.D.N.Y. May 1, 2013) is not persuasive.  *Kenny* cites *Saunders*, arguably constitutes dicta, and does not address *Soundbite* or any of the arguments relied on in *Gager* and other cases.  *Kenny*, 2013 WL 1855782, at *6-7.  None of the cases cited

---

[1] The court in *Gager* declined to afford *Chevron* deference to the *Soundbite* ruling, and the court will do so here as well.  *See Gager*, 727 F.3d at 271 n.5.

by King suggest to the court that the analysis applied in *Gager* and similar cases is wrong or should be ignored.

King raises a handful of additional arguments to the contrary, but none of them are new or novel.  Other courts have already rejected all of King's arguments, including its arguments comparing the TCPA to other, similar statutes with revocation provisions (Mot. at 6); *Gager*, 727 F.3d at 270; and its argument that statutory silence is equivalent to an affirmative dictate that the consumer be unable to revoke consent (Mot. at 6); *Gager*, 727 F.3d at 270.  To the contrary, Mr. Munro's interpretation of the statute does not require the court to re-write the TCPA; instead, it requires only a common-sense application of statutory construction rules that, in any event, the court is bound to follow.  The court rejects King's arguments just as other courts have done. *See, e.g.*, *Gager*, 727 F.3d at 270.

As numerous other courts have held, the TCPA allows consumers to revoke consent to receive text messages and allows them to bring a private action under the TCPA if the messages do not stop thereafter.  In light of *Gager* and *Soundbite*, King's motion is DENIED.

**C.     Discovery Motions**

Also pending before the court are King's Motion for a Protective Order (Mot. for PO (Dkt. # 20)) and Mr. Munro's Motion to Compel and for Sanctions (Mot. to Compel (Dkt. # 22)).  The gist of these two motions is that King asserts it need not respond to Mr. Munro's discovery requests because it has a dispositive motion pending.  (*See* Mot. for PO at 2-3; Mot. to Compel at 1-6.)  In the Motion for Protective Order, King asks the

court to give its blessing to this obstructive conduct by granting a motion to stay pending a ruling on King's motion for judgment on the pleadings. (Mot. for PO at 3-4.) The court DENIES this motion as moot in light of the above ruling. Further, the court finds untenable King's position that it need not respond to discovery, ORDERS King to respond to outstanding discovery requests in a timely fashion, and ORDERS King to pay sanctions to Mr. Munro in an amount sufficient to compensate Mr. Munro for the attorney's fees and costs associated with filing his Motion to Compel. Mr. Munro shall submit an affidavit describing these costs.

### III. CONCLUSION

The court DENIES King's motion for judgment on the pleadings (Dkt. # 13), DENIES AS MOOT King's Motion for Protective Order (Dkt. # 20), GRANTS IN PART Mr. Munro's Motion to Compel Discovery (Dkt. # 22) as described, and DENIES the Motion to Compel Discovery in all other respects.

Dated this 26th day of November, 2013.

_____
JAMES L. ROBART
United States District Judge

ORDER- 9